MAGEE FURNACE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5600.   Promulgated May 8, 1928.

*Charles G. Smith, Esq.,* and *Donald Horne, Esq.,* for the petitioner.
*Joseph K. Moyer, Esq.,* for the respondent.

1220

OPINION.

Van Fossan: The petitioner was incorporated to take over the assets and business of a former corporation of the same name, to enable three stockholders of the old company to withdraw their interests from the business. Because of the possibility that their stock holdings were in violation of the Clayton Act, those stockholders desired to withdraw from the old company and were willing to surrender their entire interests for an amount equivalent to their cash investments in the company. Stockbridge, the remaining stockholder of the old company, and the moving spirit in its management, undertook to carry out the plan adopted for the accomplishment of the objects desired. He caused the petitioner to be incorporated and arranged for the sale of its first preferred stock for cash. All the assets of the old company were transferred and conveyed to Stockbridge in con-

sideration of $200,000 cash and a portion of the second preferred stock of petitioner, which was received by Stockbridge from the petitioner. Stockbridge transferred and conveyed all the assets of the old company to the petitioner in consideration of $200,000 cash, $200,000 second preferred stock (less the amount paid to bankers for commission on sale of first preferred stock) and $100,000 common stock. In accordance with the plan adopted, Stockbridge paid the agreed cash and stock to the three stockholders of the old company for their interests and retained the balance of petitioner's stock for his interest and his services in completing the transaction. The entire transaction was completed at one time and carried out as a single deal. The transfer and conveyance of the assets to Stockbridge, the transfer and conveyance of the same assets by Stockbridge to the petitioner, the issue of certificates of petitioner's stock and the passing of the considerations for each transfer and conveyance were all simultaneous acts.

The respondent urges that the intervention of Stockbridge in the chain of title to these assets brings into operation section 331 of the Revenue Act of 1918, contending that since the old company transferred the assets to Stockbridge individually, he was the owner of the entire interest therein; that the subsequent transfer of the assets to the petitioner was from Stockbridge as an individual; and that the latter transfer was a reorganization of a business in which an interest or control of 50 per cent or more remained in the same person, Stockbridge. This position of the respondent rests entirely upon the form of the transaction and disregards the substance. The evidence clearly shows the real nature and effect of the dual transfer and the intention of the parties. The transfer to Stockbridge was merely for the purpose of facilitating the transfer of the assets from the old company to the petitioner. Stockbridge did not participate in the transaction in his individual capacity, but acted merely as the medium for the transfer of the assets from the old company to the petitioner, which was the real and only object of the whole transaction. Stockbridge did not acquire the assets for himself. His title thereto was only momentary at most. He transferred all the assets to the petitioner at the same time that they were transferred to him, the two transfers were executed simultaneously, and the only consideration paid for the assets at any time was paid by the petitioner. The entire transaction was in substance a direct transfer from the old company to the petitioner, with Stockbridge acting as the agency through which the transaction was consummated. We are of the opinion that the computation of petitioner's invested capital is not limited or affected by the provisions of section 331 of the Revenue Act of 1918.

The petitioner contends that the value of the assets acquired by it at the time of acquisition exceeded the cash and par value of the

capital stock paid and issued therefor, and that the actual value of such assets should be included in invested capital. Section 326 (a) of the Revenue Act of 1918 provides that invested capital means:

(1) Actual cash bona fide paid in for stock or shares;

(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in-surplus;  *  *  *

(3) Paid-in or earned surplus and undivided profits;  *  *  *.

The petitioner relies upon an appraisal of a portion of the assets acquired to establish the actual cash value thereof at the date of acquisition, accepting as correct the respondent's valuation of the remaining assets. The appraisal was made in the latter part of 1919, by a competent and qualified engineer, who testified at the hearing to the value of the assets determined by him upon the appraisal and this testimony is the only evidence of value offered by the petitioner. The exact date of this appraisal is not disclosed, but it appears to have been carefully and thoroughly made at approximately the time of the formation of the new company. The respondent elected to rest his case on section 331 of the Revenue Act of 1918, did not cross examine the witness or offer any affirmative proof to impeach the accuracy of the values testified to or the credibility of the witness. Respondent also relies on the sale by the retiring stockholders as establishing the best measure of value of the assets. With this position we can not agree. That sale was made under circumstances somewhat comparable to a forced sale. It was not a typical, representative or open-market sale and is not a fair criterion of value. Thus the testimony of this witness stands as the best evidence of value of petitioner's assets.

We are of the opinion that this testimony demonstrates that petitioner's assets had an actual cash value equal to the amount claimed by petitioner and that respondent was in error in excluding the sum of $229,221.99 from invested capital.

The record in the case does not enable us to identify the specific items of property involved in the issue as to depreciation. Apparently the rates of depreciation are not contested. However, we have found the value at time of acquisition of the property included in the appraisal and so far as the same items are involved, depreciation should be recomputed in accordance therewith.

The only issue remaining to be considered is whether or not the respondent erred in excluding from invested capital an item of $42,000, which the petitioner alleges represents commissions paid to the bankers upon the sale of its first preferred stock. Substan-

tially the same question was before the Board in *Simmons Co.*, 8 B. T. A. 631, and we there discussed fully the underlying principles. Following the reasoning of the *Simmons case*, we hold that respondent was in error in reducing invested capital by the amount paid out in commissions. The entire amount received in payment for stock properly went into invested capital. The fact that the commissions were immediately paid out would not, of itself, reduce invested capital.

*Judgment will be entered on 15 days' notice, under Rule 50.*